UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

THOMAS J. BROOKS, III, M.D., )
)
    Plaintiff, )
)
v. ) No.   1:18-CV-12
)         Judge Phillips
KEVIN SPIEGEL, in his individual capacity )
and in his official capacity as the Chief )
Executive Officer of Chattanooga-Hamilton )
County Hospital )
Authority (d/b/a Erlanger Health System), )
)
    Defendant. )

## **MEMORANDUM AND ORDER**

Plaintiff Thomas J. Brooks, III, M.D. asserts several claims against Kevin Spiegel, the Chief Executive Officer of the Chattanooga-Hamilton County Hospital Authority, d/b/a Erlanger Health System ("Erlanger"), in both his individual and official capacity. Mr. Spiegel has filed a motion to dismiss all of Dr. Brooks' claims pursuant to Fed. R. Civ. P. 12(c) with supporting briefs and exhibits [Docs. 25, 26, 35]. Dr. Brooks has responded in opposition [Doc. 32] to the motion to dismiss. He has also filed a motion to exclude matters outside the pleadings [Doc. 28], followed by Mr. Spiegel's response and plaintiff's reply [Docs. 31, 33].

For the reasons set forth herein, the defendant's motion to dismiss [Doc. 25] is **DENIED** and plaintiff's motion to exclude [Doc. 28] is **DENIED**.

I.   **Relevant Facts**[1]

Dr. Brooks has been a licensed physician in Tennessee since 1981 and he has held hospital privileges at Erlanger as a staff physician since 1982 [Doc. 39 at ¶ IV]. Mr. Spiegel is the President and CEO of Erlanger [*Id.* at ¶ I]. Erlanger is a governmental entity created by the Tennessee General Assembly to provide health care facilities and programs for the residents of Chattanooga and Hamilton County, Tennessee [Doc. 26-1 at p. 1]. Erlanger has a Board of Trustees appointed by the Mayor of Hamilton County and the Tennessee General Assembly [Doc. 39 at ¶ VIII]. The Board of Trustees is vested with the "absolute and complete authority" to operate and manage the business of the hospital, including the granting of or refusal of medical staff privileges [Doc. 26-1 at p. 2]. The Bylaws of the Erlanger Medical Staff provide that the Board of Trustees "has delegated to the Medical Staff … responsibility for the quality of patient care" and the "delineation of clinical privileges" [*Id.* at pp. 6, 9—10].

Dr. Brooks has complained "for many years about racial discrimination by the Hospital Authority against him and other African-American healthcare providers" [Doc. 39 at ¶ VI]. Dr. Brooks and Mr. Spiegel "have dealt directly about these issues many times" and "Dr. Brooks has documented complaints for years, as well as the responses or lack of responses by the hospital authority" [*Id.*]. According to plaintiff, Mr. Spiegel "had

---

[1]For the purposes of a motion to dismiss, the Court takes the factual allegations in the amended complaint [Doc. 39] as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint").

full knowledge of the racial discrimination complaints" of plaintiff and other African-American physicians at Erlanger [*Id.* at ¶ XII]. Plaintiff claims that Mr. Spiegel and previous CEOs have been aware of such complaints and have "gone out of their way to ignore and not address" them [*Id.*]. Mr. Spiegel assured Dr. Brooks that what African-American physicians had accomplished at FHS [Family Health Services] was significant to the community and it was "only right" that Erlanger develop a positive relationship with the physicians and FHS facility, but "[t]alk did not turn into action" [*Id.* at ¶ XII]. Further, Mr. Spiegel stated that an executive at Erlanger "would assist in developing the relationship" between Erlanger and the physicians of FHS, but "[t]his never materialized" [*Id.*].

Dr. Brooks filed a Title VI complaint with the Department of Diversity at Erlanger, but it was dismissed "with no explanation as to either how it was investigated, or how it was processed, recorded and documented" [*Id.* at ¶ XIV]. Since the filing of his Title VI complaint, Dr. Brooks has experienced "continued isolation and lack of support" from the administration and staff at Erlanger as demonstrated by responses to his emails that were not "respectful or professional" [*Id.* at ¶ XIX].

Joe Winnick, an Erlanger executive, offered Dr. Brooks the opportunity to work and provide health care to patients at the Alton Park and Dodson Avenue Health Centers, but stated that Dr. Brooks could not provide medical services anywhere else in the area, including FHS, the facility that he and others created and staffed [*Id.* at ¶ XV]. Similarly, April Moore, the Executive Director of the Alton Park and Dodson Avenue Health Centers,

refused Dr. Brooks' offer to volunteer his medical services for free at the health centers [*Id*. at ¶ XVII].

Dr. Brooks met with Gerald Webb, the only African-American on Erlanger's Board of Directors, to express his concerns and provide documents to support his claims [*Id.* at ¶ XVIII]. However, after Mr. Webb met with Erlanger representatives, "Mr. Webb showed no interest in the concerns Dr. Brooks had expressed" and sent Dr. Brooks "a disappointing and disrespectful email response" [*Id*.].

Dr. Brooks claims that Erlanger suspended his hospital privileges "for no legal reason" and "arbitrarily demanded" that he submit to medical and psychological examinations [*Id.* at ¶ XI]. Plaintiff claims that Mr. Spiegel is involved in all steps of disciplining physicians at Erlanger and "has created a custom of Erlanger ignoring complaints of racial discrimination and pushing back against complaints" [*Id.* at ¶ XIII]. Plaintiff claims Mr. Spiegel has directly participated in the violation of his rights and that the has "directed, encouraged, tolerated or acquiesced in the unlawful conduct of his subordinates" [*Id*.]. Dr. Brooks alleges that a violation of his rights to equal protection and due process as well as the 1st and 14th Amendments to the Constitution [*Id.* at ¶ II]. Dr. Brooks also alleges that he has been retaliated against for filing a Title VI complaint [*Id.* at ¶ XIX].

## II.     Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure states, "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Motions for judgment on the pleadings are reviewed under the same standard as motions to dismiss under Rule 12(b)(6). *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). That is, "all well-pleaded material allegations of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Id*. The Court construes the complaint in a light most favorable to the plaintiff, accepts all factual allegations as true, and determines whether the complaint states a plausible claim for relief. *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir. 2010), *cert. denied*, 562 U.S. 1201 (2011) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *League of United Latin Am. Citizens v. Bredesen,* 500 F.3d 523, 527 (6th Cir. 2007)).

Applying the pleading requirements outlined in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Iqbal* to Rule 12(c) motions, plaintiffs must "plead ... factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Albrecht,* 617 F.3d at 893 (citation and internal quotation marks omitted); *see New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1050–51 (6th Cir. 2011). When considering a Rule 12(c) motion, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012) (quoting *Kottmyer v. Maas*, 436 F.3d 684, 689 (6th Cir.

2006)). However, "[i]f it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds." *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018) (citations omitted).

III.    **Plaintiff's Motion to Exclude Matters Outside of the Pleadings [Doc. 28]**

In support of the motion to dismiss, Mr. Spiegel filed (1) the Tennessee Private Acts providing for the creation, organization, and operation of Erlanger [Doc. 26-1]; (2) Erlanger's Bylaws of the Medical Staff [Doc. 26-2]; and (3) Erlanger's Title VI grievance procedure, Dr. Brooks's Title VI grievance, and the written response to his grievance [Doc. 26-3]. Following Mr. Spiegel's motion to dismiss, Dr. Brooks filed a motion to exclude those documents [Doc. 28]. Dr. Brooks complains that defendant has inappropriately submitted unauthenticated matters outside the pleadings, which should convert the motion to one for summary judgment per Fed. R. Civ. P. 12(d) [Doc. 29 at pp. 1—2].

In response, Mr. Spiegel first notes that only the timing distinguishes a Rule 12(c) motion from a Rule 12(b)(6) motion [Doc. 31 at p. 4 (citing *Ooltewah Mfg., Inc. v. Country Coach, Inc.*, No. 1:05-CV-221, 2005 WL 2671126, at *1 (E.D. Tenn. Oct. 18, 2005))]. Mr. Spiegel also notes that Rule 12(d) is not absolute and that some documents outside the pleadings may be considered without converting a motion to dismiss to a motion for summary judgment [*Id*. at pp. 4—5]. Specifically, Mr. Spiegel contends that public records and documents attached to or referenced in the plaintiff's complaint may be considered with a motion to dismiss. Thus, Mr. Spiegel contends that the Court must take judicial

6

notice of the private acts establishing Erlanger, and that Erlanger's by-laws and plaintiff's Title VI complaint are referenced in the complaint [*Id*. at pp. 6—8]. Finally, Mr. Spiegel has submitted the Unsworn Declaration of Jeffrey N. Woodard, Erlanger's Chief Legal Officer, to authenticate the contested exhibits [Doc. 31-1].

In reply, Dr. Brooks reiterates that the submission of documents outside the pleadings is contrary to the dictates of Rules 12(c) and 12(b)(6) and the Supreme Court's opinions in *Twombly* and *Iqbal* [Doc. 33 at pp. 1—2]. Plaintiff does not dispute the authenticity of any of the exhibits, but instead he contends that none of the documents are central to his claims and are only presented to make arguments that are inappropriate for a motion to dismiss [*Id.* at p. 2]. Dr. Brooks also argues that defendant is trying to "bootleg irrelevant matters before the court" in violation of Tennessee Rule of Professional Conduct 3.5, the prohibition against ex parte communication with a tribunal [*Id.*]. Thus, plaintiff contends that defendant has presented irrelevant matters before the Court while tying the plaintiff's hands in responding without the benefit of discovery [*Id.*].

The Court will begin its analysis with plaintiff's last argument, that Mr. Spiegel's submission of documents outside the pleadings with a motion to dismiss effectively violates the rule against ex parte communication [*see* Doc. 33 at p. 2 (citing Tenn. Sup. Ct. R. 8, RPC 3.5)]. RPC 3.5(b) states that "[a] lawyer shall not … communicate ex parte with such a person during the proceeding unless authorized to do so by law or court order." Ex parte communication with the court is communication by one side, usually without notice to the other side. Because Mr. Spiegel filed the disputed documents attached to a pleading

7

and that pleading was served on counsel for Dr. Brooks via the Court's Electronic Case Filing ("ECF") system, Mr. Spiegel and his counsel have not engaged in ex parte communication with the Court. Further, as comment [2] to RPC 3.5 notes, the rule "would not prohibit a lawyer from communicating with a judge on the merits of the cause in writing if the lawyer promptly delivers a copy of the writing to opposing counsel … because that would not be an ex parte communication." Dr. Brooks' argument to the contrary is without merit.

Similarly, in response to the motion to dismiss, Dr. Brooks argues that Mr. Spiegel's counsel is acting as both an advocate and a witness by tendering unauthenticated material to the Court [Doc. 32 at pp. 2—3 (citing Tenn. Sup. Ct. R. 8, RPC 3.7(a))]. RPC 3.7(a) states "[a] lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness unless; (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." Dr. Brooks has provided no explanation for how the submission of unauthenticated documents converts defense counsel to a witness, particularly in light of Dr. Brooks' admission that he "has no reason to even challenge the documents tendered by Defendant as not being what they purport to be" [Doc. 33 at p. 2]. This argument is also without merit.[2]

---

[2]Plaintiff also cursorily claims that the submission of these exhibits is "fundamentally unfair" and "a violation of due process under the 5th and 14th Amendments to the United States Constitution" [Doc. 32 at p. 3]. It is unclear how the submission of documents with a pleading of which plaintiff has notice and an opportunity to respond could constitute a due process violation. Issues adverted

Fed. R. Civ. P. 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court" on a motion under Rule 12(b)(6) or 12(c), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, Mr. Spiegel is correct that Rule 12(d)'s prohibition against consideration of matters outside the pleadings is not absolute. "Under a well-established exception to Rule 12(d), courts may consider documents attached to a Rule 12(b)(6) or 12(c) motion without converting either into a summary judgment motion if the attached materials are: (i) referred to in the plaintiff's complaint and are central to the claims or (ii) matters of public record." *Kassem v. Ocwen Loan Serv., LLC*, 704 F. App'x 429, 432 (6th Cir. 2017); *Cope v. Gateway Area Dev. Dist., Inc.*, 624 F. App'x 398, 403 n.2 (6th Cir. 2015); *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008) (matters of public record may be considered on a motion to dismiss). It is undisputed that none of the documents filed with the motion to dismiss were attached to the amended complaint. Thus, the question is whether the documents were referenced in the complaint and are central to plaintiff's claims, or whether they are matters of public record.

Mr. Spiegel argues that the Tennessee Private Acts related to the creation of the Erlanger Health System are relevant to plaintiff's allegation that Erlanger "is a governmental entity with trustees appointed by the Mayor of Hamilton County, Tennessee,

---

to in a perfunctory manner unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the Court to put "flesh on its bones." *Citizens Awareness Network, Inc. v. United States Nuclear Reg. Comm'n*, 59 F.3d 284, 293—94 (1st Cir. 1995).

and the General Assembly [Doc. 31 at p. 6 (citing Doc. 39 at ¶ VIII)]. Mr. Spiegel argues that these matters are directly relevant to his liability under *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658 (1978) and that the Court must take judicial notice of these public records [*Id.*]. The Private Acts are not referenced in the amended complaint, but they are public records. Accordingly, the Court will not exclude them from consideration on the instant motion to dismiss.

As to the Bylaws of Erlanger, Mr. Spiegel notes that they are implicated in plaintiff's allegations as to the suspension of his hospital privileges and the requirement that he submit to medical and psychological examinations [Doc. 31 at p. 6 (citing Doc. 39 at ¶ XI)]. Further, the amended complaint directly references the Bylaws by alleging that "Mr. Spiegel is required to be involved in almost all steps in the disciplining of medical staff physicians pursuant to the By Laws of the Erlanger Medical Staff" [*Id.* (citing Doc. 39 at ¶ XIII)]. Thus, Mr. Spiegel is correct that the Bylaws are referenced in the plaintiff's complaint; the question is whether they are central to plaintiff's claims. *See Kassem*, 704 F. App'x at 432. Mr. Spiegel contends that the Bylaws are "relevant to decisionmaking authority and 'custom or policy' liability under *Monell*, as well as Plaintiff's claims that his rights to due process were violated" [Doc. 31 at p. 7]. As discussed below, in order to succeed on his official capacity claims, plaintiff must prove that he suffered a violation of his constitutional rights due to a municipal custom or policy. Accordingly, the Court will not exclude the Bylaws from consideration on the motion to dismiss.

Finally, Mr. Spiegel notes that plaintiff alleges that he filed a Title VI complaint with Ms. Elizabeth Appling, the head of the Department of Diversity at Erlanger, but that she dismissed the complaint "with no explanation as to either how it was investigated, or how it was processed, recorded and documented" [Doc. 39 at ¶ XIV]. Accordingly, plaintiff's Title VI complaint and Erlanger's response are directly referenced in the amended complaint and are central to plaintiff's claims. While Erlanger's Title VI grievance procedure is not itself directly mentioned in plaintiff's amended complaint, plaintiff has directly challenged how his grievance was investigated and processed. Accordingly, the Court finds that the Title VI grievance procedure, plaintiff's Title VI complaint, and Erlanger's response are all central to plaintiff's claims. The Court will not exclude consideration of these documents on the instant motion to dismiss.

Therefore, for all of these reasons, plaintiff's motion to exclude matters outside of the pleadings [Doc. 28] will be **DENIED**.

IV.    **Motion to Dismiss**

The Court begins review of defendant's motion to dismiss by noting that defendant presented many arguments based on what plaintiff *might* be alleging. Plaintiff disclaimed several of those theories and claims in his response [Doc. 32]. Specifically, plaintiff unequivocally described his claim as one pursuant to 42 U.S.C. § 1983 and that his reference to Title VI is "background" [*Id.* at p. 1]. Plaintiff disclaims any relief for anything prior to the revocation of his hospital privileges "which neither party has alleged took place

more than one year prior to the filing suit" [*Id.* at p. 3]. He also "makes no contention that Erlanger had a policy of inadequate training or supervision" and "asserts no rights under Respondeat Superior" [*Id.*]. Finally, plaintiff states that he "has made no claim under state law" [*Id.* at p. 7].

Instead, plaintiff asserts:

> A custom is a habitual practice; the usual way of acting in given circumstances. This is precisely what Dr. Brooks has described by Chattanooga-Hamilton County Hospital Authority ignoring Dr. Brooks' complaint of racial discrimination for "many years." The assertions of Dr. Brooks and the ignoring of them by the Defendant and hospital authority for "many years has created a custom of discrimination that Kevin Spiegel is responsible for enforcing.

[*Id.* at p. 3]. Plaintiff describes the "essence" of his complaint as follows:

> [H]e repeatedly made complaints of racial discrimination, with requests for corrective action, concerning himself and other African-Americans that Kevin Spiegel and Chattanooga-Hamilton County Hospital Authority dealt with, and that he had his hospital privileges terminated because of making repeated complaints that were never redressed.

[*Id.* at p. 6].

Accordingly, the Court will address those arguments and theories that seem to remain at issue.

### A. Official Capacity Claims

Dr. Brooks claims that he has complained of racial discrimination for many years and his complaints have been ignored by Erlanger, thus creating "a custom of discrimination that Kevin Spiegel is responsible for enforcing" [Doc. 32 at p. 3]. Thus, the

Court interprets his claim as one of a custom of inaction by Erlanger and Mr. Spiegel that has violated his constitutional rights.

A claim under § 1983 against a governmental official in his official capacity is a suit against the governmental entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).[3] In order to establish liability under § 1983, a plaintiff must demonstrate: (1) he was deprived of a right secured by the Constitution or law of the United States; and (2) the deprivation was caused by a person acting under the color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002).

It is well settled that a municipality may not be held liable under § 1983 "for an injury inflicted solely by its employees or agents" or on the basis of respondeat superior. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Accordingly, to succeed on a municipal liability claim under § 1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694). A "custom"

---

[3]There is no dispute that Erlanger is a governmental entity and a political subdivision of the State of Tennessee. *See Fitten v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:01-CV-152, 2002 WL 32059748, at *1 (E.D. Tenn. Oct. 21, 2002).

that is a basis for a civil rights violation must be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir.), *cert. denied*, 510 U.S. 826 (1993) (quoting *Monell*, 436 U.S. at 691)). "It must reflect a course of action deliberately chosen from among various alternatives." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996).

To establish a municipal liability claim under an "inaction" theory, Dr. Brooks must establish: (1) the existence of a clear and persistent pattern of a deprivation of constitutional rights by Erlanger; (2) notice or constructive notice on the part of Erlanger; (3) Erlanger's tacit approval of the unconstitutional conduct, such that its deliberate indifference in its failure to act can be said to amount to an official custom or policy of inaction; and (4) that Erlanger's custom was the "moving force" or direct causal link in the constitutional deprivation. *Id.* Defendant argues that the allegation that Erlanger has failed to addressed "unspecified complaints … pertaining to discrimination" are mere legal conclusions [Doc. 26 at p. 20]. Further, defendant contends that such allegation is refuted by plaintiff's other allegations of meetings with Mr. Spiegel, Mr. Winick, Mr. Webb, and Ms. Appling [*Id.* at pp. 20—21].

The amended complaint alleges that plaintiff has complained to Erlanger "for many years about racial discrimination" against himself and others and that he has "dealt directly" with Mr. Spiegel about these issues "many times" [Doc. 39 at ¶ VI]. Further, plaintiff claims Mr. Spiegel "had full knowledge of the racial discrimination complaints" and he and other CEOs "have gone out of their way to ignore and not address these

14

complaints" [*Id*. at ¶ XII]. Plaintiff claims that Mr. Spiegel stated that Erlanger needed to develop a positive relationship with the physicians at FHS and that an Erlanger executive would assist in doing so, but "[t]his never materialized" [*Id.* at ¶ XII]. Finally, plaintiff claims that Erlanger suspended his hospital privileges "for no legal reason" and, at Mr. Spiegel's direction, demanded that plaintiff "submit to medical and psychological examinations" [*Id*. at ¶ XI]. Plaintiff alleges that Erlanger was aware of and "has ratified" Mr. Spiegel's actions [*Id*. at ¶ IX]. Plaintiff claims that Erlanger and Mr. Spiegel have deprived him of his constitutional rights to equal protection and due process and retaliation for exercising his right to free speech under the First and Fourteenth Amendments [Doc. 32 at pp. 5—7].

In reply, defendant notes that the Board's decisions are relevant on an inaction theory because *Monell* liability requires that the final decision-maker adopts a "policy of inaction" [Doc. 35 at p. 6, n.6]. This argument highlights the flaw in the instant motion: Mr. Spiegel contends that the Board has the final decision-making authority with regard to clinical privileges and physician discipline, whereas plaintiff alleges that Mr. Spiegel has been involved in his discipline and he has "directly participated" in the violation of plaintiff's rights [Doc. 39 at ¶ XIII]. Thus, who bears responsibility for the revocation of plaintiff's clinical privileges and for ignoring complaints of racial discrimination are issues of fact that cannot be resolved on a motion to dismiss.

15

## B. Individual Liability

As noted initially, plaintiff has pled claims against Mr. Spiegel in both his official and individual capacity. An individual capacity claim under § 1983 "seeks to hold an official personally liable for the wrong alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016). Thus, an individual capacity claim requires a showing that the government official (1) either encouraged the specific incident of misconduct or otherwise directly participated in it; and (2) caused the injury. *Id.*

Mr. Spiegel argues that the amended complaint contains only conclusory allegations of any action taken by him and further that he is entitled to the defense of qualified immunity [Doc. 26 at pp. 32—33]. Plaintiff responds that Mr. Spiegel is not entitled to qualified immunity because his actions in removing plaintiff's hospital privileges and requiring him to submit to medical and psychological tests were objectively unreasonable [Doc. 32 at p. 7]. In reply, defendant contends that it is "incorrect" that he could have suspended plaintiff's hospital privileges or unilaterally required him to undergo medical evaluation [Doc. 35 at p. 13].

The doctrine of qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). There are two parts to the qualified immunity analysis: (1) whether there was a violation of the plaintiff's statutory

16

or constitutional right(s), and (2) whether the right was clearly established to a reasonable person at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

The amended complaint alleges that Erlanger agents "at the direction of Kevin Spiegel" demanded that plaintiff submit to medical and psychological examinations and have continued to deprive him of his hospital privileges [Doc. 39 at ¶ XI]. The amended complaint alleges that Mr. Spiegel is involved "in almost all steps" of disciplining medical staff and "[t]here is no part of the disciplining of Dr. Brooks that Mr. Spiegel has not been involved in" [*Id.* at ¶ XIII]. Thus, as with the official capacity claims, there is a factual dispute on whether Mr. Spiegel was involved (or could have been involved) in the suspension of plaintiff's clinical privileges or other disciplinary action. The Court notes that a motion to dismiss is meant to challenge only the sufficiency of pleading and that the qualified immunity issue might be best left to a later stage of litigation when there are adequate facts with which to support more well-developed arguments which touch upon all aspects of the qualified immunity inquiry. *See Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008) (stating that "[d]ismissals on the basis of qualified immunity are generally made pursuant to Fed. R. Civ. P. 56 summary judgment motions, not 12(b)(6) sufficiency of pleadings motions" and pointing out that the plaintiff "has not yet had an opportunity to initiate discovery in order to develop a factual record upon which a court may then determine whether dismissal based on qualified immunity is proper"). The factual dispute as present in the allegations precludes the application of qualified immunity at this time.

17

## V. Conclusion

For the reasons set forth herein, defendant's motion to dismiss [Doc. 25] is **DENIED** and plaintiff's motion to exclude matters outside of the pleadings [Doc. 28] is **DENIED**.

IT IS SO ORDERED.

    s/ Thomas W. Phillips
SENIOR UNITED STATES DISTRICT JUDGE